# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RICHARD GIBSON, | CV F 05 0042 AWI LJO HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| LEA ANN CHRONES, Warden, | [Doc. #1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This action has been referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

## BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by jury trial on March 12, 1979, of murder in the first degree in violation of Cal. Penal Code § 187. On April 19, 1979, Petitioner was sentenced to serve an indeterminate prison term of seven years to life.

---

[1]This information is derived from the petition for writ of habeas corpus, Respondent's answer to the petition, and Petitioner's traverse to Respondent's answer.

On January 3, 2002, a parole suitability hearing was held by the California Board of Prison Terms ("BPT"). At the conclusion of the hearing, the BPT denied parole and deferred rehearing for three years.

On February 1, 2002, Petitioner filed an administrative appeal of the decision. On November 13, 2002, the appeal was denied. Thereafter, Petitioner did not pursue any further administrative appeals or appellate challenges in the state courts.

On November 20, 2003, Petitioner filed a civil rights complaint in this Court. <u>See</u> Case No. CV F 03 6639 AWI DLB HC. On December 17, 2003, it was redesignated as a federal petition for writ of habeas corpus. On May 14, 2004, the petition was dismissed for failure to exhaust state remedies.

On February 19, 2004, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. On December 22, 2004, the petition was summarily denied.

On January 10, 2005, Petitioner filed the instant petition for writ of habeas corpus in this Court. The petition for writ of habeas corpus does not challenge the underlying conviction; rather, it challenges the January 3, 2002, decision of the California Board of Prison Terms to deny parole.

On June 27, 2005, Respondent filed an answer to the petition for writ of habeas corpus.

On July 13, 2005, Petitioner filed a traverse to Respondent's answer. On July 15, 2005, Petitioner filed an opposition to Respondent's contention that the petition was filed beyond the one-year statute of limitations.

## DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* <u>Drinkard v. Johnson,</u> 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

1    Petitioner is in custody of the California Department of Corrections pursuant to a state court

2    judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C.

3    § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold

4    requirement of being in custody pursuant to a state court judgment. White v. Lambert, 370 F.3d

5    1002, 1006 (9th Cir.2004); Sass v. California Board of Prison Terms, 2005 WL 1406100, *2 (E.D.

6    Cal.2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in

7    behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is

8    in custody in violation of the Constitution or laws or treaties of the United States.").

9    The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

10   Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70

11   (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the

12   adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable

13   application of, clearly established Federal law, as determined by the Supreme Court of the United

14   States" or "resulted in a decision that was based on an unreasonable determination of the facts in

15   light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

16   538 U.S. at 70-71; see Williams, 529 U.S. at 413.

17   As a threshold matter, this Court must "first decide what constitutes 'clearly established

18   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

19   quoting 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court

20   must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

21   of the relevant state-court decision." Id., quoting Williams, 592 U.S. at 412. "In other words, 'clearly

22   established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

23   the Supreme Court at the time the state court renders its decision." Id.

24   Finally, this Court must consider whether the state court's decision was "contrary to, or

25   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

26   quoting 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

27   writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

28   question of law or if the state court decides a case differently than [the] Court has on a set of

1    materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

2    "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

3    identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

4    that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

5        "[A] federal court may not issue the writ simply because the court concludes in its

6    independent judgment that the relevant state court decision applied clearly established federal law

7    erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A

8    federal habeas court making the "unreasonable application" inquiry should ask whether the state

9    court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

10        Petitioner has the burden of establishing that the decision of the state court is contrary to or

11    involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

12    94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,

13    Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

14    decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003);

15    Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

16        AEDPA requires that we give considerable deference to state court decisions. The state

17    court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

18    interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537

19    U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

20    II.  Subject Matter Jurisdiction

21        Petitioner contends that his federal constitutional rights were violated, and he was deprived of

22    liberty without due process of law, when the BPT failed to set a parole release date at his parole

23    hearing on January 3, 2002. Petitioner contends that the language of the California parole statutes

24    creates a presumptive entitlement to, and thus has a liberty interest in, the setting of a parole release

25    date. Because Petitioner is challenging the actions of a state, the Court will proceed under the

26    Fourteenth Amendment.

27        The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life,

28    liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. In certain cases, a

1    state law may create a liberty interest protected by the Constitution. In examining questions of

2    procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or

3    property interest which has been interfered with by the State, Board of Regents of State Colleges v.

4    Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures

5    attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472,

6    103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v.

7    Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections

8    v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

9         Thus, the first question that must be answered is whether there exists a liberty interest

10   protected by the Due Process Clause. The United States Supreme Court has expressly denied

11   entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and

12   Correctional Complex, 442 U.S. 1, 7 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no

13   constitutional or inherent right of a convicted person to be conditionally released before the

14   expiration of a valid sentence."). "Nevertheless, early release statutes can create a 'liberty interest

15   protected by due process guarantees.'" Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per

16   curiam), *quoting* Greenholtz, 442 U.S. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

17   Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory

18   measures that impose substantive limitations on the exercise of official discretion." Bermudez, 936

19   F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985).

20   However, no protected entitlement to release exists unless a state scheme includes a formula which

21   mandates release after the occurrence of specified events. Baumann, 754 F.2d at 844 (stating that the

22   unique "shall/unless" formula was decisive in Greenholtz). If there exists mandatory language in a

23   parole statute, then Petitioner has a protected liberty interest in parole release. Greenholtz, 442 U.S.

24   at 11-12. If, however, the state merely holds out the possibility of parole, then such a hope is not

25   protected by due process. Id.; Baumann, 754 F.2d at 844. Therefore, the Court must look to the

26   California parole statutes to determine whether the unique structure and language of those statutes

27   creates an entitlement to parole release or a presumption of expectation of parole release.

28        The relevant California statutory language is contained in Cal. Penal Code § 3041, which

states, in relevant part:

> (a) One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and *shall normally set a parole release date* as provided in Section 3041.5.

> (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting . . . .

Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

The language in Cal. Penal Code § 3041 provides for the possibility of parole. A release date *shall* be set *unless* the BPT determines that the prisoner should not be released. The word "shall" is not used in an absolute or mandatory sense. <u>Sass</u>, 2005 WL 1406100, *6. It is qualified or modified in both subsections. Thus, parole is not automatic; it is discretionary. Nevertheless, the Ninth Circuit Court of Appeals, without the assistance of a definitive California Supreme Court interpretation, found the language in § 3041 to be mandatory. See <u>McQuillion v. Duncan</u>, 306 F.3d 895 (9th Cir.2002).

In 2005, in <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1087 (2005), the California Supreme Court provided a definitive interpretation of § 3041's structure and language. In <u>Dannenberg</u>, the California Supreme Court held: 1) the language in § 3041 is not mandatory; 2) there is no right to parole in California; 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a parole date; and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any expectancy an inmate may have in parole found in § 3041(a). <u>Dannenberg</u>, 34 Cal.4th at 1084, 1087-88, 1097-98; <u>Sass</u>, 2005 WL 1406100, *6.

This Court is therefore faced with conflicting interpretations from the Ninth Circuit and the California Supreme Court. Normally, the Court would defer to the Ninth Circuit's interpretation of the state statute; however, circuit opinions are only persuasive authority. <u>Clark</u>, 331 F.3d at 1069; <u>Duhaime</u>, 200 F.3d at 600-01. On the other hand, "[w]hen a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive." <u>Sass</u>, 2005 WL 1406100, *6, *citing* <u>Gurley v. Rhoden</u>,

1  421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); see also Oxborrow v. Eikenberry, 877

2  F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989) (Federal courts are bound by state court

3  rulings on questions of state law). As noted by this Court in Sass, the general principle of deference

4  to state court interpretations is compelled by the Supreme Court's clearly established habeas corpus

5  jurisprudence. See, e.g., Greenholtz, 422 U.S. at 12, citing Bishop v. Wood, 426 U.S. 341, 345, 346

6  n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (demonstrating deference to, and the need for, holdings

7  and interpretations of state supreme courts when establishing interests protected by due process);

8  Allen, 482 U.S. 369, 377 n.8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (implying that a Montana

9  Supreme Court decision would have been instructive if there had been one on point).

10        Therefore, this Court will defer to the California Supreme Court's interpretation of § 3041 in

11  Dannenberg. The California Supreme Court answers the first question: the language of § 3041 is not

12  mandatory. Dannenberg, 34 Cal.4th at 1087-88. The absolute sense of the word "shall" is eviscerated

13  by the modifications ("shall normally set") and qualifications ("shall . . . unless it determines")

14  contained in the subsection. Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

15  Furthermore, "the lack of mandatory language in § 3041, especially when considered in light of 1)

16  California's long standing jurisprudence denying the existence of a parole right, 2) the statutory

17  scheme of § 3041, and 3) the broad discretion given to the BPT under the "noncapital murderers"

18  exception to California's determinant sentencing law, precludes a legitimate expectation of parole

19  release and, thus, does not give rise to an associated liberty interest under clearly established federal

20  law." Sass, 2005 WL 1406100, *7, citing Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98.

21  Therefore, as this Court held in Sass, "the unique structure and language of § 3041 precludes the

22  finding of a federal liberty interest in parole." Sass, 2005 WL 1406100, *7. Consequently, the state

23  court determination that Petitioner's federal due process rights were not violated at his January 3,

24  2002, parole hearing was not contrary to or an unreasonable of clearly established federal law. 28

25  U.S.C. § 2254(d). In addition, because California's parole statutes do not give rise to a protected

26  liberty interest, this Court is without jurisdiction to entertain Petitioner's claims.  Because the Court

27  is without jurisdiction, it is not necessary to address the merits of Petitioner's claims.

28        With respect to Petitioner's claim that the BPT's denial of parole violated Petitioner's state

1   constitutional rights, the claim is not cognizable in a federal habeas action, because generally, issues

2   of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We

3   have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "),

4   *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993)

5   (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a

6   constitutional violation, may not be corrected on federal habeas").

7   III.  Review in light of Supreme Court's Analysis in Sandin v. Conner

8           Although Petitioner does not claim a violation of his constitutional rights as determined in

9   Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), this Court is aware that

10  Sandin presents another analysis for assessing whether prisoners have a protected liberty interest.

11  In Sandin, the Supreme Court held that "States may under certain circumstances create liberty

12  interests which are protected by the Due Process Clause." 515 U.S. at 483-84. To determine whether

13  there is a state-created liberty interest, the Court must inquire whether the state action "imposes [an]

14  atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

15  at 484. As noted by this Court in Sass, however, Sandin "is by no means clearly established in the

16  context of parole rights." Sass, 2005 WL 1406100, *5. In Sandin, the Supreme Court determined

17  whether a prisoner's rights were violated in the context of his conditions of confinement, not the

18  possibility of his release from that confinement. Sandin, 515 U.S. at 480-81. In addition, Sandin did

19  not overrule Greenholtz or Allen. Id. at 483 n.5. Accordingly, Greenholtz and Allen remain

20  controlling law in the context of determining whether Petitioner has a liberty interest in parole.

21  Indeed, the Supreme Court has cited Greenholtz and Allen approvingly following Sandin as

22  examples of cases where state statutes have created liberty interests through the use of mandatory

23  language. See I.N.S. v. St. Cyr, 533 U.S. 289, 345-46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

24          In any case, Petitioner does not have a protected liberty interest even if Sandin were applied.

25  As correctly noted by Respondent, every California prisoner serving an indeterminate prison term is

26  subject to the statutory maximum term unless the BPT fixes a shorter term. See Dannenberg, 34

27  Cal.4th at 1097-98. Therefore, the BPT's denial of parole cannot possibly impose an "atypical or

28  significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515

U.S. at 484. Consequently, California's parole statutes do not give rise to a protected liberty interest under the Supreme Court's test in <u>Sandin</u>.

IV.  <u>Untimeliness of Petition</u>

Respondent raises as an additional bar to a review of the petition the defense of untimeliness. Respondent contends Petitioner violated the one-year statute of limitations for filing a federal habeas corpus petition. <u>See</u> 28 U.S.C. § 2244(d)(1).

As previously indicated, the instant petition was filed on January 10, 2005, and thus, it is subject to the provisions of the AEDPA. The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date that the petitioner's direct review became final. In a situation such as this where the petitioner is challenging the BPT's decision to deny parole, the relevant date for determining when the one-year statute of limitations began to run is when the BPT denied petitioner's administrative appeal. <u>Redd v. McGrath</u>, 343 F.3d 1077 (9th Cir. 2003). Here, the BPT denied Petitioner's administrative appeal on November 13, 2002. Therefore, Petitioner had one year until November 13, 2003, to file the instant petition. However,

1  Petitioner did not file the instant federal petition until January 10, 2005. Absent applicable tolling,

2  the petition is time-barred.

3      A.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

4      Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

5  for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

6  pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2).  In

7  Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is

8  properly pursuing post-conviction relief, and the period is tolled during the intervals between one

9  state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the

10  state court system. 122 S.Ct. 2134, 2135-36 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006

11  (9th Cir. 1999), cert. denied, 120 S.Ct. 1846 (2000).

12      Here, Petitioner did not file any applications for state collateral relief until filing his habeas

13  petition in the California Supreme Court on February 19, 2004. However, the limitations period had

14  already expired at this point.  Petitioner argues that he filed a federal habeas petition in this Court on

15  December 17, 2003, in Case No. CV F 03 6639 AWI DLB P. Actually, the petition was filed on

16  November 20, 2003, as a civil rights complaint. It was redesignated on December 17, 2003, as a

17  habeas corpus action. Ultimately, the petition was dismissed without prejudice on May 14, 2004,

18  because Petitioner's sole claim for relief was unexhausted. In any case, the petition/complaint was

19  filed after the limitations period had already expired; therefore, it could not operate to toll the

20  limitations period. Moreover, the limitations period is not tolled for the time such an application is

21  pending in federal court.  Duncan v. Walker, 121 S.Ct. 2120, 2129 (2001).

22      B. Other Considerations

23      Petitioner contends he filed a state habeas petition in the Los Angeles County Superior Court

24  in Case No. A613586, which he states was denied on November 30, 2003. However, the matter he

25  references is actually his underlying criminal action; it is not a habeas action challenging the parole

26  board's decision.

27      Petitioner also objects to Respondent's averment of a violation of the limitations period in the

28  answer. Petitioner cites to the briefing schedule which required Respondent to file a motion to

1    dismiss based on limitations within sixty (60) days of the date of service of the order. Petitioner

2    correctly points out that Respondent's answer was filed after this time period had elapsed.

3    Nevertheless, the briefing schedule only applied to the filing of a motion to dismiss in lieu of an

4    answer. The Court's order did not preclude Respondent from raising the issue in her answer. It was

5    within Respondent's discretion to address the issue of the limitations period in a motion to dismiss,

6    or as part of her answer addressing the merits of the petition.

7         In sum, this Court is without jurisdiction to entertain Petitioner's claims, and Petitioner has

8    violated the one-year statute of limitations. Therefore, the petition should be dismissed with

9    prejudice.

10                                    **RECOMMENDATION**

11        Accordingly, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be

12   DISMISSED with prejudice and the Clerk of Court be DIRECTED to enter judgment for

13   Respondent.

14        This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

15   States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule

16   72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

17   California.

18        Within thirty (30) days after being served with a copy, any party may file written objections

19   with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

20   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

21   filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

22   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The

23   parties are advised that failure to file objections within the specified time may waive the right to

24   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

25   IT IS SO ORDERED.

26   **Dated:    August 21, 2005**                    **/s/ Lawrence J. O'Neill**
     b9ed48                                   UNITED STATES MAGISTRATE JUDGE

27

28